[Crim. No. 3940.  Second Dist., Div. Three.  Mar. 27, 1946.]

THE PEOPLE, Respondent, v. THOMAS RICHARD SALO,
Appellant.

Paul Angelillo for Appellant.

Robert W. Kenny, Attorney General, and L. G. Campbell,
Deputy Attorney General, for Respondent.

WOOD, J. — Defendant was accused of the crimes of burglary and receiving stolen property. In a trial without a jury, he was acquitted of the charge of burglary and convicted of receiving stolen property. He appeals from the judgment of conviction and the order denying his motion for a new trial, and asserts that the evidence was insufficient and that there was misconduct on the part of the district attorney and the court.

On January 27, 1944, eleven new automobile tires were stolen from a gasoline service station in Los Angeles. On February 3, 1945, three police officers and three officers of the state narcotic bureau, in the presence of defendant, searched a liquor store at 861 East Jefferson Boulevard, Los Angeles, which was owned by defendant's sister, and operated by her with the assistance of defendant. The salesroom of the store was at the front of the building. Adjoining the back of that room was a storeroom, and back of the storeroom a bedroom. After they had searched the bedroom where there was "a lot of new merchandise," new clothes and bed linen, and while they were talking to defendant about that merchandise and were searching the storeroom, one of the officers, who was on top of a stack of beer cases, said there were tires back of the beer cases. Thereupon the defendant said, according to the testimony of one of the officers, " 'Those tires are hot; that is the only thing that is hot here; the rest of that stuff my sister bought and paid for.' " The beer cases were stacked about nine feet high and so arranged that, in order to get the tires, it was necessary to climb over the stack of beer cases. One of the officers did so and found six automobile tires, four of which were new tires that had been stolen from the service station.

An officer testified that he asked defendant where he got the tires, and defendant said he got them " 'from a fellow named George, a colored boy,' " who came along driving a Firestone truck, and who asked defendant if he could use some tires. The officer testified further that defendant said that he paid $10 or $12 apiece for the tires; that he had had them about a year; that he knew they were hot, and that was the reason he hid them back of the beer cases; and that he ran the store for his sister most of the time. The officers of the narcotic bureau arrested defendant on February 3d, and when all had left the store defendant locked it with his keys. He was arrested by the police officers on the charge herein on February 5th.

Another police officer testified that on February 5th defendant said he bought the tires as "recaps" about two months previously, and that he did not know the difference between new tires and recaps. He testified further that after the officers had taken defendant to his father's house where defendant lived, had made a search there, and had left, they asked defendant about the burglary, and defendant said, " 'There wasn't no burglary, I did not go in the station,— after all, you got the man you want why bother my family, they know nothing about this.' "

Defendant testified that in December, 1944, he was standing in front of a pool hall talking to a fellow about tires, and a colored fellow by the name of George, whom he had never seen before, came up and told defendant that he could get tires for him, that he worked for the Firestone Company, that the tires were recapped and it was not necessary to have a priority; that he told the fellow he would like to have some recapped tires; that defendant did not know the size of the tires used on his automobile, but the fellow looked at his automobile, said he would bring the tires that afternoon, and that the price would not be more than $10 each; that defendant told the fellow his name, where he worked, and that he would meet him at the pool hall when he returned with the tires; that the fellow then drove away in a Firestone truck, returned later, and said it would be "a couple of days" before he could get the tires; that "a couple of days" later, accompanied by another man, he came to the liquor store in a Firestone truck, rolled six tires into the storeroom and placed them against the wall; that defendant paid him $60 cash for the tires, but did not get a bill of sale, nor the fellow's surname, nor the license number of his truck; that defendant had no automobile, but the automobile for which he bought the tires was a 1940 model belonging to his brother-in-law who had been in the penitentiary since 1939; that his brother-in-law bought the automobile after he was in the penitentiary; that the tires on the automobile were not in "too good a condition"; that the reason he did not put the tires on the automobile was that he did not have time to do it; that he did not know whether the tires would fit the automobile; that the reason the tires could not be seen was that the store gets "an awful lot" of beer, and as it came in he "would just stack it up there" in front of the tires which were against the wall; that he did not say that the tires were "hot."

Two witnesses called on behalf of defendant testified that they were present when the tires were delivered, and they heard the fellow who delivered them say that the price was $60.

The evidence was sufficient to support the judgment. The credibility of the witnesses was for the determination of the trial judge. He stated at the close of the trial that he did not believe the testimony of the defendant and his witnesses.

Appellant asserts that the district attorney was guilty of prejudicial misconduct because he asked defendant where his brother-in-law, the owner of the automobile for which defendant said he bought the tires, lived. His argument is that the question was designed to bring out that appellant was related to a bad person, the brother-in-law being in the penitentiary. On several occasions in his testimony, the defendant had referred to the automobile, for which he said he bought the tires, as "my" automobile. It having appeared later in his testimony that he did not own an automobile, it was the privilege of the district attorney, as a test of the veracity of the defendant, to inquire concerning the name and whereabouts of the owner of the automobile and his availability as a witness. Although the answer to such inquiry revealed that the owner, the defendant's brother-in-law, was in the penitentiary, it was not misconduct to make the inquiry. The trial was without a jury, and there is no foundation for asserting in effect that the trial judge was influenced improperly by such testimony. The assertion that there was misconduct on the part of the trial judge because he directed the defendant to answer such inquiry is also without merit. Appellant refers to a certain comment by the trial judge as constituting an attack on the credibility of the witnesses for the defense. The comment was in part that, "The witnesses [referring to defendant and his witnesses] could not have helped the Court any better if they had prefaced each one of their answers with the comment 'I am lying.' . . ." That statement was made after the case was submitted to the trial judge for decision, and it was not improper for him to express his opinion as to the credibility of the witnesses.

The judgment and the order denying the motion for a new trial are affirmed.

Desmond, P. J., and Shinn, J., concurred.